SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

HOWMEDICA OSTEONICS CORP. A )
subsidiary of Stryker Corporation, )
STRYKER CORPORATION A New Jersey )
corporation, )
 )
     Plaintiffs, )
 )
     v. )  No. 1:17-cv-00938-SEB-TAB
 )
DJO GLOBAL, INC. A California )
corporation, et al., )
 )
     Defendants. )

**ORDER ON MOTIONS TO DISMISS**

  This matter comes before us on Defendant DJO Global, Inc.'s Motion to Dismiss [Dkt. No. 134] and the Individual Defendants' Motion to Dismiss [Dkt. No. 136].  For the following reasons we GRANT IN PART and DENY IN PART Defendant DJO's Motion and DENY the Individual Defendants' Motion.[1]

---

[1] Plaintiff has not properly pled diversity jurisdiction.  To invoke the subject matter jurisdiction of a federal court, jurisdictional allegations must be made on personal knowledge, not on information and belief.  *See America's Best Inns, Inc. v. Best Inns of Abilene, L.P.*, 980 F.2d 1072, 1074 (7th Cir. 1992) (only a statement about jurisdiction "made on personal knowledge has any value" and a statement made "'to the best of my knowledge and belief' is insufficient" to engage diversity jurisdiction "because it says nothing about citizenship").  The citizenships of the individual defendants have been pled based on "information and belief," which is insufficient.  [*See* Am. Compl. ¶¶ 9-11.]  However, because diversity jurisdiction is not the only basis for subject matter jurisdiction here, to wit, plaintiff's federal question-based claim for violation of the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1831, *et seq.*, we have subject matter jurisdiction over that claim.

**Facts[2]**

Plaintiff Howmedica Osteonics Corp., a subsidiary of Stryker Corporation, ("Stryker") develops, manufactures, and sells orthopedic implants, instruments, and other products and services, including products used for reconstructive and trauma surgeries. [Am. Compl. ¶ 15.] The orthopedic industry is highly competitive. [*Id.* ¶ 18.] DJO Global, Inc. ("DJO") is a competitor of Stryker, providing orthopedic devices for use in rehabilitation, pain management, and physical therapy, and is a developer, manufacturer, and distributor of a broad range of surgical reconstructive implant products. Both Stryker and DJO rely on their sales representatives and the relationships they cultivate to successfully sell their products. [*See id.* ¶ 19.]

Defendants Justin Davis, Jake Eisterhold, and Eric Huebner ("Individual Defendants") were employed by Stryker until they each resigned on February 11, 2016 and started working for DJO. [*Id.* ¶¶ 1, 3.] Each of the Individual Defendants had entered into agreements with Stryker containing post-employment obligations related to competing with Stryker and disclosure of Stryker's trade secrets. [*Id.* Exs. 1, 2, 3 ("Non-Competition Agreements").] Specifically, the Non-Competition Agreements prohibit the Individual Defendants, for a period of one year after their departures from Stryker, from soliciting and selling products that compete with those they sold at Stryker. [*Id.*]

Stryker alleges that the Individual Defendants engaged in a strategy referred to as "flip-flopping" wherein they appear to trade clients, enabling them to covertly service the

---

[2] This case was transferred to our court a year ago, on March 28, 2017, from the United States District Court for the District of New Jersey. The original complaint was filed on April 25, 2016.

surgeons and hospitals they worked with at Stryker while appearing to honor their non-competition obligations. Stryker alleges that this conduct is a violation of their Non-Competition Agreements because the Individual Defendants are helping each other solicit business or service accounts with whom the Individual Defendants had contact during the final twenty-four months of their employment with Stryker. [*See, e.g.,* Am. Compl. ¶¶ 72-79; Non-Competition Agreement § 6.2.]

Stryker contends that DJO "raided" its employees, soliciting the Individual Defendants to work for DJO and to breach their post-employment obligations. Armed with the Individual Defendants' knowledge of Stryker's relationships and trade secrets, Stryker alleges that DJO has unfairly competed with it in an attempt to sabotage its business. With respect to the Individual Defendants, Stryker contends that they each breached their Non-Competition Agreements. Stryker has pled seven counts in its Amended Complaint including corporate raiding, tortious interference with contract, tortious interference with prospective economic advantage, breach of contract, unfair competition, violations of the Defend Trade Secrets Act of 2016, and violations of the Indiana Uniform Trade Secrets Act. DJO and the Individual Defendants argue that each of Stryker's seven claims warrants dismissal.

## Standard of Review

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of claims for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). In this procedural context, the Court must accept as true all well-pled factual allegations in the complaint and draw all ensuing inferences in favor of the non-movant.

F.3d 1059, 1060 (7th Cir. 2009). Nevertheless, the complaint must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests," and its "[f]actual allegations must ... raise a right to relief above the speculative level." *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (citations omitted). The complaint therefore must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see* Fed. R. Civ. P. 8(a)(2). Stated otherwise, a facially plausible complaint is one which permits "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## Discussion

### 1. Tortious Interference with Contracts (Count III) and Tortious Interference with Business Relations (Count IV)[3]

Stryker brings two related and overlapping claims. The first claim alleges that DJO tortiously interfered with Stryker's Non-Competition Agreements with the Individual Defendants (Count III), as follows:

> DJO intentionally induced, permitted, or incentivized [sic] [the Individual Defendants] and others to violate the [Non-Competition Agreements], without justification, in an effort to employ and/or unlawfully use the services of [the Individual Defendants], and other former Stryker employees, to destabilize Stryker's North Central Branch, move its customers, harm its work force, and/or unfairly compete with Stryker.

[Am. Compl. ¶ 112.] In Count IV of its Amended Complaint, Stryker alleges that all of the defendants interfered with Stryker's business relationships, as follows:

---

[3] Count III is directed against DJO only. Count IV is directed against all defendants.

4

Notwithstanding their knowledge of the existence of these [customer] relationships and expectancies, Defendants intentionally and unjustifiably interfered with Stryker's business relationships with its customers and/or prospective customers by soliciting Stryker's customers to leave Stryker and move their business to DJO.

[*Id.* ¶ 120.]

DJO seeks dismissal of both of these claims on the grounds that Stryker has plead itself out of court by alleging that DJO had a legitimate justification for its alleged interference, to wit, that DJO was acting to advance its business competition. DJO also argues that the Amended Complaint lacks allegations of conduct to support a breach of contract, a requirement for a tortious interference with contract claim (Count III). With respect to Stryker's claim for tortious interference with a business relationship (Count IV), DJO argues that the lack of any allegation that DJO engaged in any unlawful activity warrants dismissal of the claim.

### a.    Business Competition Justification

"Indiana has long recognized that intentional interference with a contract is an actionable tort, and includes any intentional, unjustified interference by third parties with an employment contract." *Winkler v. V.G. Reed & Sons, Inc.*, 638 N.E.2d 1228, 1234 (Ind. 1994) (citing *Bochnowski v. Peoples Fed. Sav. & Loan*, 571 N.E.2d 282, 284 (Ind. 1991)). The tort of intentional interference with a contract "reflects the public policy that contract rights are property, and under proper circumstances, are entitled to enforcement and protection from those who tortiously interfere with those rights." *Id.* (citing *Miller v. Ortman*, 136 N.E.2d 17, 34 (Ind. 1956)).

Under Indiana law, the elements of a claim for tortious interference with a contract are: "(1) the existence of a valid and enforceable contract; (2) defendant's knowledge of the existence of the contract; (3) defendant's intentional inducement of breach of the contract; (4) the absence of justification; and (5) damages resulting from defendant's wrongful inducement of the breach." *Konecranes, Inc. v. Davis*, No. 1:12-CV-01700-JMS, 2013 WL 1566326, at *2 (S.D. Ind. Apr. 12, 2013) (quoting *Melton v. Ousley*, 925 N.E.2d 430, 440 (Ind. Ct. App. 2010) (citing *Levee v. Beeching*, 729 N.E.2d 215, 221 (Ind. Ct. App. 2000)). The claim of tortious interference with a business relationship differs only in that, instead of a valid and enforceable contract, a valid relationship must exist and some illegal conduct must have occurred. *Levee*, 729 N.E.2d at 222. "In order to adequately allege the absence of justification, thus satisfying the fourth element for establishing tortious interference, a plaintiff must do more than merely assert that the defendant's conduct was unjustified." *Konecranes*, 2013 WL 1566326, at *2. (citations omitted). "[T]he existence of a legitimate reason for the defendant's actions provides the necessary justification to avoid liability." *Id.* (citing *Morgan Asset Holding Corp. v. CoBank, ACB*, 736 N.E.2d 1268, 1272 (Ind. Ct. App. 2000) (quoting *Winkler v. V.G. Reed & Sons, Inc.*, 619 N.E.2d 597, 600-01 (Ind. Ct. App. 1993)). It is the alleged absence of justification element that is at issue here.

DJO argues that the fourth prong of a tortious interference claim, an absence of justification, exists only where the allegedly tortious conduct is "malicious and *exclusively* directed to injure." [Dkt. No. 135 at 7-8 (citing *Miller v. Cent. Ind. Comty. Found., Inc.*, 11 N.E.3d 944, 961 (Ind. Ct. App. 2014) and *Smith v. Biomet*, 384 F. Supp.2d 1241, 1249

(N.D. Ind. 2005)).]  Because Stryker has alleged that DJO's actions were taken, in part, to advance its competitive business interest, DJO contends that it is insulated from a tortious interference claim.  [Dkt. No. 135 at 23-25.]

Indiana has adopted the Restatement (Second) of Torts (1977), sections 767 and 768.  *Winkler*, 638 N.E.2d at 1235 (Ind. S.Ct.) (adopting § 767 and giving deference to the comments thereto) (collecting cases from other jurisdictions considering these factors); *Harvest Life Ins. Co. v. Getche*, 701 N.E.2d 871, 877 (Ind. Ct. App. 1988) (adopting § 768); *see also Zimmer, Inc. v. Stryker Corp.*, No. 3:14-cv-152-JD, 2014 WL 3866454 (N.D. Ind. Aug. 6, 2014) (considering § 767).  Section 767 identifies seven factors to consider when determining whether interference has been improper.

> In determining whether an actor's conduct in intentionally interfering with a contract or a prospective contractual relation of another is improper or not, consideration is given to the following factors:
>
> (a) the nature of the defendant's conduct;
>
> (b) the defendant's motive;
>
> (c) the interests of the plaintiff with which the defendant's conduct interferes;
>
> (d) the interests sought to be advanced by the defendant;
>
> (e) the social interests in protecting the freedom of action of the defendant and the contractual interests of the plaintiff;
>
> (f) the proximity or remoteness of the defendant's conduct to the interference; and
>
> (g) the relations between the parties.

Restatement (Second) of Torts § 767 (1977).

The Indiana Supreme Court has held: "As the comments to § 767 indicate, the weight to be given to each consideration may differ from case to case depending upon the factual circumstances, but *the overriding question is whether the defendants' conduct has been fair and reasonable under the circumstances*." *Winkler*, 638 N.E.2d at 1235 (citing § 767, cmt. j) (emphasis added). Section 767, comment c, provides: "The issue is not simply whether the actor is justified in causing the harm, but rather whether he is justified in causing it in the manner in which he does cause it." This is not a separate issue unrelated to the other factors enumerated above.

Section 768 of the Restatement (Second) of Torts provides guidance for determining whether competition itself constitutes proper or improper interference. The comments to § 768 describe by listing a series of negative factors the "special application of the factors determining whether an interference is improper or not, as stated in § 767." Rest. (Second) of Torts § 768 cmt. b. The section states in relevant part:

§ 768 Competition as Proper or Improper Interference

(1) One who intentionally causes a third person not to enter into a prospective contractual relation with another who is his competitor or not to continue an existing contract terminable at will does not interfere improperly with the other's relation if

(a) the relation concerns a matter involved in the competition between the actor and the other and

(b) the actor does not employ wrongful means and

(c) his action does not create or continue an unlawful restraint of trade and

(d) his purpose is at least in part to advance his interest in competing with the other.

(emphasis added).

Section 768 points back to § 767 to define "wrongful means" as used in § 768(1)(b). The "predatory means discussed in § 767, comment c … are wrongful in the situation covered by this Section." Section 767, Note on Clause (a), comment c. One such wrongful means is misrepresentation. "Fraudulent misrepresentations are also ordinarily a wrongful means of interference and make an interference improper." *Id.*

Stryker alleges that DJO acted with malice and in bad faith to harm Stryker's goodwill and mislead its customers "by falsely implying that Stryker is unable to accommodate its customers' needs" and, specifically, that it cannot provide "case coverage for all orthopaedic surgeries in which Stryker products [were] used." [Am. Compl. ¶¶ 4, 95, 124.] Stryker also contends that DJO sought to weaken Stryker in strategic areas and destabilize its operations relating to the Individual Defendants' areas of responsibility. [*Id.* ¶¶ 4, 57.] The Amended Complaint continues: "DJO seeks to misappropriate decades of Stryker's research, development and customer service in order to shortcut its own success at Stryker's expense." [*Id.* ¶ 5.] According to Stryker, DJO was motivated by a desire to harm Stryker. [*Id.* ¶ 97.] But DJO emphasizes Stryker's allegations that DJO was, to some extent, motivated by Stryker's desire to solicit its customers "to switch their business to DJO" [*id.* ¶ 4].

We find that Stryker has appropriately and adequately alleged that DJO acted without justification by hiring the Individual Defendants for the purpose of weakening Stryker and by fraudulently misrepresenting Stryker's ability to service its customers. Consequently, Stryker has met its burden of pleading the element of "absence of justification" required for a claim of tortious interference as defined by Indiana law.

9

Although DJO may be able to present evidence on summary judgment or at trial that it acted with a business purpose that was "fair and reasonable under the circumstances", such a factual inquiry is not appropriate for resolution on a motion to dismiss. *See Zimmer*, 2014 WL 3866454, *8 (denying a motion to dismiss a claim for tortious interference because the Restatement of Torts § 767 factors are not appropriately adjudicated on a motion to dismiss).

We recognize that some of the authority DJO relies upon has concluded that improper interference exists only when the conduct at issue is "exclusively" meant to injure and that any action taken, at least in part, to advance business competition supplies a legitimate justification to defeat a tortious interference claim. *See Biomet*, 384 F. Supp. 2d at 1249-50; *Konecranes*, No. 1:12-CV-01700-JMS, 2013 WL 1566326, at *2 (distinguished by *Zimmer*, 2014 WL 3866454); *Mourning v. Allison Transmission, Inc.*, 72 N.E.3d 482, 488 (Ind. Ct. App. 2017) (quoting *Duty v. Boys & Girls Club of Porter County*, 23 N.E.3d 768, 775 (Ind. Ct. App. 2014)); *Morgan Asset Holding Corp.*, 736 N.E.2d at 1272 (citing *Winkler*, 619 N.E.2d at 600-01 (Ind. Ct. App.) (affirmed but not adopted by the Indiana Supreme Court)); *Flintridge Station Assocs. v. Am. Fletcher Mortg. Co.*, 761 F.2d 434, 441 (7th Cir. 1985) (quoting *Reinforce, Inc. v. Birney*, 308 N.Y. 164, 169–70, 124 N.E.2d 104, 106 (1954)). When adjudicating matters of Indiana state law, however, we are bound to apply the law espoused by the Indiana Supreme Court. Our analysis thus reflects that court's adoption of the Restatement (Second) of Torts §§ 767 and 768 as the means to adjudicate claims for tortious interference and that court's directive that "the overriding question is whether the defendants' conduct has been fair and reasonable under

10

the circumstances." *Winkler*, 638 N.E.2d at 1235 (citing Rest (2d) Torts § 767, cmt. j).  In our view, Stryker's allegation that DJO's conduct was, at least in part, undertaken to advance its business is sufficient and DJO is not on this basis insulated from a claim against it for tortious interference.

For the reasons articulated above, we DENY Defendants' Motion to Dismiss Counts III and IV on the grounds that Plaintiff failed to plead a lack of justification for the alleged interference.

### b.    Breach of Contract To Support Tortious Interference with Contract (Count III)

The third essential element of a claim for tortious interference of contract is "defendant's intentional inducement to breach that contract" and the last element is "damages resulting from the breach," both of which plainly require a breach of contract. *Gatto v. St. Richard School, Inc.*, 774 N.E.2d 914, 922 (Ind. Ct. App. 2002) (affirming the grant of summary judgment where there was no breach of the contract subject to alleged interference).  DJO contends that Stryker "cannot demonstrate"[4] that the Individual Defendants breached their Non-Competition Agreements and therefore Stryker's Intentional Interference with Contract claim fails to state a claim upon which relief can be granted.  [Dkt. No. 135 at 18-19.]

Stryker alleges that DJO interfered with its Non-Competition Agreements with the Individual Defendants.  [*See* Am. Compl. ¶¶ 111-12 (Count III).]  In a separate claim,

---

[4] DJO frequently misstates Stryker's burden on a motion to dismiss.  It is well-established that plaintiff need not prove the facts alleged in response to a motion to dismiss, but must include "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

Stryker alleges that the Individual Defendants breached their Non-Competition Agreements by providing services to DJO, soliciting Stryker's customers, and misusing Stryker's confidential information, among other conduct allegedly violative of their Non-Competition Agreements [*id.* ¶¶ 107-08 (Count I).]. We discuss Stryker's Breach of Contract claim against the Individual Defendants in detail *infra*. Accordingly, because Stryker has alleged a breach of contract to support its tortious interference with contract claim, we DENY DJO's Motion to Dismiss Count III on that basis.

### c. Illegal Action Required for Tortious Interference with a Business Relationship (Count IV)

In addition to the five elements of a claim for tortious interference with a business relationship set forth above, the Indiana Supreme Court requires "some independent illegal action." *Brazauskas v. Fort Wayne-South Bend Diocese, Inc.*, 796 N.E.2d 286, 291 (Ind. 2003). An allegation of breach of contract alone is insufficient to satisfy the "illegal action" requirement; indeed, Indiana law repeatedly holds that tort remedies should not displace contract remedies. *Biomet*, 384 F. Supp. 2d at 1251–52 (citing *HAS, Inc. v. Bridgton, Inc.*, No. IP 98-0167-C H/G, 1999 WL 1893209, at *16 (S.D. Ind. Sept. 20, 1999) (relying on *Winkler*, 638 N.E.2d at 1235) (Ind.)). However, "Indiana courts have not defined 'illegality' nor have they articulated a test for a showing of 'illegal conduct.'" *Biomet*, 384 F. Supp. 2d at 1251–52 (quoting *Gaskins v. Vencor, Inc.*, No. IP99–1122–C–T/G, 2001 WL 300517, at *26 (S.D. Ind. Mar. 26, 2001) (citing *Bradley v. Hall*, 720 N.E.2d 747, 751 n.3 (Ind. Ct. App. 1999) ("Illegality is not a term of art, and no court has defined the meaning of 'illegal' as used in this context."))).

With respect to its claim for Tortious Interference with a Business Relationship (Count IV), Stryker alleges in relevant part:

> Notwithstanding their knowledge of the existence of these relationships and expectancies, Defendants intentionally and unjustifiably interfered with Stryker's business relationships with its customers and/or prospective customers by soliciting Stryker's customers to leave Stryker and move their business to DJO.

[Am. Compl. ¶ 120.]  Neither this claim-specific allegation nor any other allegation in the Amended Complaint accuses DJO of having committed any illegal conduct connected with Stryker's claim for tortious interference with business relationships.  Accordingly, we GRANT WITHOUT PREJUDICE DJO's Motion to Dismiss Count IV.

## 2.  Corporate Raiding (Count I) and Unfair Competition (Count V)[5]

Stryker's corporate raiding claim (Count I) alleges that DJO "organized a scheme to raid Stryker's employees as a means to improperly and illegally acquire Stryker's work force, its customers and its goodwill, in order to harm Stryker in the marketplace so that DJO may unfairly compete against Stryker."  [*Id.* at ¶ 97.]  In Count V (Unfair Competition), Stryker contends that the Defendants engaged in improper business tactics intended to harm Stryker's operational branches and goodwill to gain an unfair competitive advantage over Stryker.  [*Id.* ¶¶ 124-25.]  DJO seeks to dismiss Stryker's claim for Unfair Competition on the grounds that it is duplicative of its claim for tortious interference and therefore fails to state a claim upon which relief can be granted for the same reasons discussed *supra*.  [Dkt. No. 135 at 23-25.]  With respect to Stryker's claim for Corporate

---

[5] Count I is directed against DJO only.  Count V is directed against all defendants.

Raiding, DJO seeks dismissal on the grounds that no such independent cause of action is recognized under Indiana law.

The State of Indiana recognizes "unfair competition" as a general category of tort that does not describe a single course of conduct and is not defined by a specific number of elements, but, rather, is a "subspecies of the class of torts known as tortious interference with business or contractual relations" recognized "for the protection of commercial values." *Biomet 3i, LLC v. Land*, No. 1:16-cv-125-TLS-SLC, 2017 WL 1483461, *11-12 (N.D. Ind. Jan. 10, 2017) (adopted by 2017 WL 1483469 (N.D. Ind. Feb. 27, 2018)) (citing *Meridian Fin. Advisors, Ltd. v. Pence*, 763 F. Supp. 2d 1046, 1064 (S.D. Ind. 2011); *Flesher v. Univ. of Evansville*, 755 N.E.2d 589, 598 (Ind. 2001)). The Indiana Supreme Court has adopted Professor Keeton's view that unjust enrichment is a "a general category into which a number of new torts may be placed when recognized by the courts. The category is open-ended, and nameless forms of unfair competition may be recognized at any time for the protection of commercial values. *Felsher v. Univ. of Evansville*, 755 N.E.2d 589, 598 (Ind. 2001) (quoting W. Page Keeton, *Prosser and Keeton on the Law of Torts,* 1015 (5th ed. 1984)).

However, Indiana does not recognize "corporate raiding" as an independent cause of action separate and apart from a claim of unfair competition. Indeed, the cases relied upon by Stryker in its opposition to DJO's Motion to Dismiss discuss corporate raiding as a form of unfair competition. [Dkt. No. 139 at 19 (citing *Finish Line, Inc. v. Foot Locker, Inc.*, No. 1:04-cv-877-RLY-WTL, 2006 WL 146633, at *9 (S.D. Ind. Jan. 18, 2006); *CDW LLC v. NETech Corp.*, 722 F. Supp. 2d 1052 (S.D. Ind. 2007)).] Because Stryker need not

14

delineate its unfair competition claim by theory, we find that Stryker's Corporate Raiding claim (Count I) is duplicative of its claim for unfair competition (Count V), and thus is dismissed, although Stryker is permitted to pursue a theory of corporate raiding within its unfair competition claim.

We do not dismiss, however, Stryker's claim for unfair competition (Count V).  An unfair competition claim is broader than Stryker's claims for tortious interference, to wit, a claim for unfair competition encompasses a theory of corporate raiding and allegations which do not necessarily fit into the tortious interference construct.  Accordingly, we GRANT WITH PREJUDICE DJO's Motion to Dismiss Count I (Corporate Raiding) and we DENY DJO's Motion to Dismiss Count V (Unfair Competition).

**3.     Trade Secret Claims: Counts VI (Indiana law) and VII (federal law)**

Both the federal Defend Trade Secrets Act ("DTSA") and the Indiana Uniform Trade Secrets Act ("IUTSA") predicate liability on an act of misappropriation.  18 U.S.C. § 1836; Ind. Code § 24-2-3-4(a).  Under the DTSA, "misappropriation" is defined as "an unconsented disclosure or use of a trade secret by one who (i) used improper means to acquire the secret, or, (ii) at the time of disclosure, knew or had reason to know that the trade secret was acquired through improper means, under circumstances giving rise to a duty to maintain the secrecy of the trade secret, or derived from or through a person who owed such a duty."  *Mission Measurement Corp. v. Blackbaud, Inc.*, 216 F. Supp. 3d 915, 920 (N.D. Ill. 2016) (citation omitted); 18 U.S.C. § 1839(5); *see also* Ind. Code § 24-2-3-2 (same).  In seeking to dismiss the trade secret claims, DJO makes a narrow argument that because Stryker failed to allege that *DJO* misappropriated its trade secrets, Counts VI and

VII fail to state a claim against DJO upon which relief can be granted. Specifically, DJO argues that the Amended Complaint fails to adequately allege facts to support its statement that DJO is using Stryker's trade secrets.

We agree with DJO. Stryker does not allege that DJO has made an unconsented disclosure of its trade secrets or that DJO has used its trade secrets. Instead, Stryker alleges that DJO intends to do so and has the opportunity to misappropriate those secrets. For example, Stryker alleges that DJO hired the Individual Defendants to obtain Stryker's trade secrets [¶ 2], that DJO "will acquire a roadmap for designing and improving its own products, customer relationships and goodwill," and that "DJO seeks to misappropriate decades of Stryker's research … to shortcut its own success at Stryker's expense" [¶ 5]. In fact, Stryker responds to DJO's argument by identifying the Amended Complaint allegations that it is the Individual Defendants who are allegedly using those secrets. [*See* Resp. at Dkt. No. 139 at 22.]

The sole allegation that DJO *is* using or has used Stryker's trade secrets is paragraph 134 (which is repeated in paragraph 143), wherein Stryker alleges generally that DJO is using and taking advantage of those secrets "to gain a competitive advantage." [¶¶ 134, 142.] Stryker includes in the Amended Complaint sufficient facts that support an allegation that DJO has misappropriated its trade secrets. Accordingly, we GRANT WITHOUT

16

PREJUDICE DJO's Motion to Dismiss Counts VI and VII because they fail to state a claim upon which relief can be granted.[6]

## Claims Against the Individual Defendants

The Individual Defendants have moved to dismiss the Amended Complaint on two grounds, to wit, that Howmedica[7] lacks standing to assert claims for trade secret misappropriation, tortious interference, and unfair competition, and that plaintiff's breach of contract claim fails to state a claim upon which relief can be granted. For the following reasons we DENY the Individual Defendants' Motion to Dismiss.

### 1.    Standing

A motion to dismiss for lack of standing falls under Federal Rule of Civil Procedure 12(b)(1), which, similar to the 12(b)(6) standard, requires us to accept as true Howmedica's well-pleaded factual allegations and draw all reasonable inferences in its favor. *Scanlan v. Eisenberg,* 669 F.3d 838, 841-42 (7th Cir. 2012). To have standing to pursue a claim, a plaintiff must show that he or she "has suffered (or is imminently threatened with) (1) a concrete and particularized 'injury in fact' (2) that is fairly traceable to the challenged action of the defendant, and that is (3) likely to be redressed by a favorable judicial decision." *Freedom from Religion Found., Inc. v. Lew,* 773 F.3d 815, 819 (7th Cir. 2014) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992)). The Individual

---

[6] Because we dismiss Stryker's trade secret claims due to a lack of sufficient allegations of misappropriation, we need not reach DJO's argument that Stryker fails to allege a continuing violation after the passage of the DTSA.

[7] The Individual Defendants refer to plaintiff as "Howmedica" throughout their motion to dismiss briefing. We do the same.

Defendants move to dismiss for lack of standing on the grounds that Howmedica has not suffered an injury as to them because the claims it is asserting belong to its parent company, Stryker.

We can make short work of the Individual Defendants' Motion to Dismiss for lack of standing. The Motion is based on a fundamental misunderstanding of the nature of Howmedica's naming convention used in the Amended Complaint. That Howmedica Osteonics Corp. refers to itself in short form throughout the Amended Complaint as "Stryker" (much in the same way that DJO shortens Plaintiff's name to "Howmedica" and its own name to "DJO"), does not alter the fact that a single plaintiff, Howmedica Osteonics Corp., has filed claims here based on *its* customers, *its* secrets, *its* good will, *its* employees, and *its* alleged injuries. [*See* Am. Compl. ¶¶ 122, 128, 136, 144, 107-08.] Based on the plain language of the Amended Complaint, Howmedica is not attempting to assert the rights of Stryker or any other third party, but has asserted claims only for its own alleged injury. The Individual Defendants and Howmedica agree that "[t]he only way Howmedica could assert a direct claim for misappropriation of trade secrets is if it alleged that the Individual Defendants misappropriated *its*, as opposed to Stryker's, trade secrets, or if it alleged that it was in possession of Stryker's trade secrets." [Dkt. No. 137 at 13 (internal citations omitted) (emphasis added).] Should it become clear that Howmedica seeks to recover for claims that are not its own, we would expect Defendants to seek appropriate judicial relief supported by relevant facts at that time.

With regard to Stryker's breach of contract claim (Count I), the Individual Defendants contend that Howmedica is not a party to the Non-Competition Agreements

18

and therefore cannot seek to enforce them.  The two named parties to the Non-Competition Agreements are the employee and "Stryker Ortho – Indiana Branch."  [Dkt. No. 127-1.][8] "Company" or "Stryker" is defined in the agreements to include all subsidiaries, divisions, and affiliates of Stryker.   [*Id.* at § 2.1.]   The Individual Defendants contend that Howmedica lacks standing because the contracts at issue are between each Individual Defendant and *Stryker*, not Howmedica.  It is the Individual Defendants' position that the definition of "Stryker" which includes its subsidiaries, like Howmedica, expands only the scope of the obligations owed under the agreements, not the parties to the agreement.  [Dkt. No. 137 at 3.]

Our analysis is aided by a Northern District of Indiana decision that is factually and legally similar to our case.  In *Biomet 3i, LLC v. Land*, the contract at issue defined the relevant agreement between the employee and the employer company to include the company's "affiliates, parents, and both direct and indirect subsidiaries, as well as any successors-in-interest," No. 1:16-cv-125-TLS-SLC, 2017 WL 1483371, at *6 (N.D. Ind. Jan. 10, 2017), *report and recommendation adopted,* 2017 WL 1483469 (N.D. Ind. Feb. 27, 2017), much like the Howmedica/Stryker contracts here.   The *Biomet 3i* court concluded that "[b]ased on the clear language of the 2015 Agreement, both Zimmer US, Inc., and Biomet 3i, LLC, are parties to the contract, and they each have standing to enforce

---

[8] In their opening brief, without the benefit of factual support, the Individual Defendants contend that they were not employed by Howmedica, but were employed by Stryker.  [Dkt. No. 137 at 1, 10, 14.]  In response to the Individual Defendants' Motion to Dismiss, Howmedica supplied W-2 forms for each of the Individual Defendants, demonstrating that they were employed by Howmedica.  [Dkt. No. 140-2, -3, -4.]

the 2015 Agreement." *Id.*  We reach the same conclusion in this case.  According to the terms of the Non-Competition Agreements, Howmedica, as a subsidiary of Stryker, is a party to the Agreements and therefore can enforce them.  For these reasons, we DENY the Individual Defendants' Motion to Dismiss for lack of standing.

**2.     Breach of Contract**

Howmedica alleges that the Individual Defendants breached their respective Non-Competition Agreements.  [Am. Compl., Count II.]  The Individual Defendants promised as follows:

> I agree that during my employment with Stryker and for twelve (12) months after the termination of my employment for any reason, I will not … indirectly help others to solicit business from, contact or sell any Conflicting Product or Service to, any of the accounts, customers or clients, or prospective accounts, customers or clients, with whom I have had contact during the last twenty-four months of my employment with Stryker.

[Non-Competition Agreement § 6.2.]

According to the Amended Complaint, within the 12 months after leaving Howmedica, the Individual Defendants engaged in prohibited conduct by visiting the hospitals and meeting with the surgeons they serviced while employed by Howmedica.  [Am. Compl. ¶ 63 (Davis); *id.* ¶¶ 81-84 (Huebner).]  Howmedica claims that after leaving its employ, the Individual Defendants delivered surgical implants and trays to the hospitals they serviced during their employment with Howmedica.  [*Id.* ¶ 66 (Davis told hospital staff that "he could get in trouble for being there"); *id.* ¶ 86 (Huebner); *see also id.* ¶ 69 (Davis also covered several surgeries performed by surgeons he serviced while employed at Stryker.).]  For example, one month after his resignation, Davis made several visits to

one of his former hospital customers and invited hospital staff from his former territory to a DJO product demonstration. [*Id.* ¶ 60.] On at least one of these visits, Eisterhold accompanied Davis. [*Id.* ¶ 61.] Howmedica alleges that Eisterhold has been marketing DJO products in Davis's and Huebner's former territories and, on at least one occasion, was seen with Davis at one of the hospitals formerly served by Davis. [*Id.* ¶¶ 73, 74.] The allegation that the Individual Defendants contacted "customers or clients … with whom [they] have had contact during the last twenty-four months of [their] employment with Stryker," states a claim for a violation of § 6.2.

The Individual Defendants disregard Howmedica's allegations that they wrongfully contacted *their own former customers*. Instead, they focus on Howmedica's claim that solicitation of customers under a "flip-flopping theory" (wherein the Individual Defendants appear to trade their former sales territories enabling them to covertly service the surgeons and hospitals they worked with at Howmedica while appearing to honor their non-competition obligations) fails to state a claim for breach of contract because the alleged conduct does not violate § 6.2 and is otherwise permissible under the terms of the Non-Competition Agreement. [Dkt. No. 137 at 17-18.] The Individual Defendants argue that "in order for Howmedica to prevail on its breach of contract claim, it must show that the Individual Defendants were *marketing* DJO products at the time they took the otherwise permissible actions alleged in the Amended Complaint." [Dkt. No. 142 at 6.] This argument is unavailing. Howmedica's allegations that each Individual Defendant visited the hospitals that he serviced while employed by Howmedica is enough to survive a Motion to Dismiss the claim for breach of the Non-Competition Agreement. Whether Howmedica

21

can ultimately prove that the Individual Defendants' service of the customers of *other* former Howmedica employees is not dispositive here because it is not the only basis for Howmedica's breach of contract claim.

The Individual Defendants urge us to dismiss Howmedica's breach of contract claim on the basis of Judge Vazquez's rulings in the District Court of New Jersey.  Before this case was transferred to our district, Judge Vazquez denied Howmedica's Motion for a Temporary Restraining Order ("TRO") and for Expedited Discovery.  The Individual Defendants spill much ink explicating Judge Vazquez's TRO findings in which they contend he concluded that Howmedica's Complaint lacks the requisite specificity to plead a breach of contract.  [Dkt. No. 137 at 19-24.]  Setting aside for a moment that the showing required to obtain a TRO is much greater than what the Federal Rules of Civil Procedure require in the form of a short and plain statement entitling the plaintiff to relief, Judge Vazquez did not rule on a motion to dismiss or pass judgment on the sufficiency of Howmedica's Amended Complaint.  Indeed, at the request of the Individual Defendants, Judge Vazquez made clear that "if [he did not] address a particular argument, no one should interpret that as implicitly ruling upon that argument.  That argument will just not be reached."  [March 24, 2017 hearing, at Dkt. No. 165-22 at 61.]  Moreover, the Amended Complaint was not the operative complaint at the time of the TRO Motion and hearing.  Judge Vazquez's TRO rulings are thus immaterial to the adjudication of the Individual Defendants' Motion to Dismiss Howmedica's Amended Complaint on the grounds that it fails to state a claim upon which relief can be granted.

The Federal Rules of Civil Procedure require "notice" pleading: "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a). Howmedica has alleged facts necessary to plead a claim for breach of the Non-Competition Agreements.  Therefore, the Individual Defendants' Motion To Dismiss is DENIED.

### Conclusion

For the foregoing reasons, we GRANT IN PART and DENY IN PART, DJO's Motion to Dismiss [Dkt. No. 134].  DJO's Motion is GRANTED with respect to Count I, which is DISMISSED WITH PREJUDICE.  DJO's Motion is GRANTED with respect to Counts IV, VI, and VII, which are DISMISSED WITHOUT PREJUDICE.  DJO's Motion is DENIED with respect to III, IV, and V.  The Individual Defendants' Motion to Dismiss [Dkt. No. 136] is DENIED.


Date: _____3/15/2018_____          _Sarah Evans Barker_____

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana


Distribution to counsel of record via CM/ECF

23